# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| DEANDRE LAMONT HAMILTON,<br><br>*Plaintiff*,<br><br>v.<br><br>UNITED STATES OF AMERICA *et al.*,<br><br>*Defendants.* | Civil Action No. 19-1105 (RDM) |

## MEMORANDUM OPINION AND ORDER

On May 19, 2016, Wayne Wright, a criminal defendant out on pretrial release, murdered Dana Hamilton. Although Wright was prosecuted for the crime, Plaintiff DeAndre Hamilton, as the personal representative of Dana Hamilton's estate, alleges in this case that the United States government bears some responsibility for not preventing the killing. At the time Wright shot Dana Hamilton, the Court Services and Offender Supervision Agency ("CSOSA") was supposed to be tracking Wright's whereabouts using a GPS monitor. But the government contractor responsible for attaching the tracking device to Wright's body, Sentinel Offender Services, LLC ("Sentinel"), mistakenly fastened it to Wright's prosthetic leg. Leaving the tracked prosthesis at home, Wright traveled undetected to an area he was under a court order to avoid and, there, murdered Dana Hamilton.

In his original complaint, Plaintiff asserted claims against the United States, CSOSA, Sentinel, and John Does 1–5 for negligently installing the tracking device and thereby causing Dana Hamilton's death. Dkt. 1. The United States and CSOSA moved to dismiss on several grounds. Dkt. 11. In an earlier opinion, the Court granted the federal Defendants' motion to dismiss because sovereign immunity barred suit against those Defendants. *Hamilton v. United*

1

*States*, 502 F. Supp. 3d 266 (D.D.C. 2020) ("*Hamilton I*"). The Court held, in particular, that the limited waiver of sovereign immunity contained in the Federal Tort Claims Act ("FTCA") did not permit Plaintiff's claims against CSOSA because the FTCA does not waive sovereign immunity for suits against federal agencies. Likewise, the FTCA did not permit Plaintiff's claims against the United States because, although the FTCA allows certain claims against the United States, it does not waive sovereign immunity for claims premised on the negligence of independent contractors.

Following the Court's decision, Plaintiff sought leave to amend his complaint to allege that the United States was directly negligent in its decisions to hire and retain Sentinel.[1] Dkt. 27. With the parties' consent, the Court granted the motion to amend and construed the government's opposition to that motion, Dkt. 30, as a renewed motion to dismiss. Because Plaintiff's new claim again falls within an exception to the FTCA—this time, the discretionary-function exception—the Court will **GRANT** the government's motion and will **DISMISS** Plaintiff's claims against the United States.

## I. BACKGROUND

**A.    Factual and Procedural Background**

The Court detailed the tragic series of events that led to this lawsuit in its prior opinion. *See Hamilton I*, 502 F. Supp. 3d at 270–71. In short, on April 30, 2016, Wright, also known as Quincy Green, was charged in the Superior Court of the District of Columbia with unlawful possession of a firearm. Dkt. 33 at 6 (Am. Compl. ¶ 25). A few days later, the Superior Court released Wright pending trial while imposing certain conditions. *Id.* (Am. Compl. ¶ 26). As relevant here, the court ordered a component of CSOSA, known as the Pretrial Services Agency

---

[1] The proposed amended complaint also dropped Plaintiff's claims against CSOSA.

("PSA"), to attach a GPS monitoring device to Wright so that PSA could track his location. *Id.* And the court prohibited Wright from visiting the 800 block of Chesapeake Street S.E. in the District of Columbia. *Id.* Under a contract between PSA and Sentinel, it was Sentinel's job to secure the GPS device to Wright's leg. *Id.* at 6–7 (Am. Compl. ¶¶ 27–28). Wright has one natural leg and one detachable prosthetic leg. *Id.* at 7 (Am. Compl. ¶ 29). Sentinel's agents (named in the amended complaint as John Does 1–5) attached the GPS to Wright's prosthetic leg. *Id.* (Am. Compl. ¶ 30). Wright then circumvented the tracking device by replacing the tracked prosthesis with a spare one, traveled in violation of the stay-away order to the 800 block of Chesapeake Street S.E., and shot and killed Dana Hamilton. *Id.* (Am. Compl. ¶¶ 31–32). Within a week, Wright was charged with second-degree murder. *Id.* (Am. Compl. ¶ 32).

Plaintiff originally filed this lawsuit on April 18, 2019, against the United States, CSOSA, Sentinel, and John Does 1–5. Dkt. 1. The federal Defendants moved to dismiss on several grounds. Dkt. 11; Dkt. 13. On November 16, 2020, the Court granted the federal Defendants' motion. *Hamilton I*, 502 F. Supp. 3d at 278. The Court dismissed Plaintiff's claims against CSOSA because federal agencies, unlike the United States itself, are not subject to suit under the FTCA—and CSOSA "is an independent executive branch agency." *Id.* at 273–74; *see also* D.C. Code § 24-133(a) (establishing CSOSA "within the executive branch of the Federal Government"); Dkt. 1 at 3 (Compl. ¶ 6) (referring to CSOSA as "a government agency operating under the laws of the United States"). The Court dismissed Plaintiff's claims against the United States, in turn, pursuant to the independent-contractor exception to the FTCA. *Hamilton I*, 502 F. Supp. 3d at 274–77. Based on an analysis of the contract between PSA and Sentinel, the Court concluded that the government did not exert control over Sentinel with respect to the installation of GPS tracking devices. *Id.* Accordingly, the United States could not be held liable

3

for Sentinel's alleged negligence. *Id.* at 277. The Court also noted that, in opposing the motion to dismiss, Plaintiff had asserted that "the United States was negligent for hiring Sentinel in the first place, a claim that would not be subject to the FTCA's independent contractor exception." *Id.* But Plaintiff's argument suffered from a glaring problem—"the complaint ma[de] no mention of this separate cause of action and d[id] not allege any facts to support it." *Id.* at 278. That argument thus could not save the original complaint from dismissal. *Id.* But the Court permitted Plaintiff to "file a motion seeking leave to amend his complaint within twenty-one days" of its decision, to the extent "Plaintiff ha[d] a good-faith basis . . . to allege that the United States was negligent for hiring Sentinel given known concerns about the company's competence." *Id.*

On December 7, 2020, Plaintiff filed a motion to amend, dropping his claims against CSOSA while seeking to add a new claim alleging that the United States was negligent in its decisions to retain Sentinel.[2] Dkt. 27. The United States opposed the motion to amend on the ground that the new claim would be barred by additional exceptions to the FTCA and that, in any event, the new claim failed on the merits. Dkt. 30. At a hearing on that motion, the Court (with the parties' consent) granted the motion to amend but construed the government's opposition as a motion to dismiss. Minute Entry (Feb. 5, 2021). In a new Count IV, the amended complaint asserts that the United States "had or should have had knowledge of Defendant Sentinel's unfitness to perform its contractually obligated duties," in light of the company's "history of

---

[2] Although the amended complaint also names Sentinel as a defendant, Plaintiff has yet to file proof that he has served Sentinel. The Court previously granted Plaintiff's request to stay his time to effect service on Sentinel until thirty days after the resolution of the government's first motion to dismiss. *See* Dkt. 24; Minute Order (Apr. 14, 2020). That time passed long ago, and thus, unless Plaintiff either files proof of service on Sentinel or establishes good cause for any failure to do so on or before July 21, 2021, the Court will dismiss the pending claims against Sentinel without prejudice pursuant to Federal Rule of Civil Procedure 4(m).

negligence and of being sued for alleged impropriety, including not properly monitoring offenders and providing faulty monitoring equipment." Dkt. 33 at 13 (Am. Compl. ¶¶ 61–62).

The amended complaint details several past accusations of wrongdoing and incompetence against Sentinel and alleges that, despite the controversy surrounding the company, PSA awarded Sentinel a contract to provide electronic monitoring services and equipment for pretrial and probationary defendants and then renewed that contract year after year. *Id.* at 4–5 (Am. Compl. ¶¶ 15–20). For example, in 2012, after years of litigation, a woman in Georgia allegedly received $175,000 because Sentinel had negligently issued a request for her arrest long after she had already completed her probation. *Id.* at 4 (Am. Compl. ¶ 16). In March 2013, a Florida man sued Sentinel for using allegedly faulty monitoring equipment that caused his false arrest and imprisonment; Sentinel allegedly settled the suit in 2016 for an undisclosed amount. *Id.* at 5 (Am. Compl. ¶ 17). Also in 2013, an audit in Orange County, California, allegedly found that more than a dozen out of 143 offenders had faulty monitoring bracelets, at least five of which had gone completely offline for twenty days. *Id.* (Am. Compl. ¶ 18). As a result, according to the amended complaint, Sentinel failed to report probation violations that the defective devices should have detected. *Id.* A subsequent audit in Los Angeles County, California, allegedly told a similar story. *Id.* It found that, during a two-month period, fifty-one of 196 defendants had to exchange their GPS trackers because of malfunctions. *Id.* Violent offenders allegedly went unmonitored for more than five days at a time. *Id.*

As the Court explained in *Hamilton I*, PSA first contracted with Sentinel to provide electronic monitoring of defendants on September 26, 2013. *Hamilton I*, 502 F. Supp. 3d at 275. According to Plaintiff, as part of obtaining the contract, "Sentinel completed a Past and Present Performance Questionnaire and was required to provide details regarding their performance of

previously awarded contracts." Dkt. 33 at 6 (Am. Compl. ¶ 22). PSA extended the contract annually through September 25, 2018, moreover, despite further legal trouble for Sentinel. *Id.* (Am. Compl. ¶ 24). For instance, in 2015, another Georgia woman was allegedly awarded $200,000 because Sentinel had failed to withdraw a warrant request after she had paid all outstanding fees. *Id.* at 5 (Am. Compl. ¶ 19). And in 2016, an Illinois woman sued Sentinel for allegedly failing to monitor two juveniles who attacked the plaintiff while purportedly under the company's electronic supervision. *Id.* (Am. Compl. ¶ 20). Finally, the amended complaint avers that approximately 2,800 plaintiffs have filed a class-action suit against Sentinel in Georgia for allegedly using coercive tactics, such as threats of additional jail time, to extract money from probationers. *Id.* at 4 (Am. Compl. ¶ 15). As one example, the suit alleges that Sentinel required people to submit to and pay for drug tests that no court had ordered. *Id.* Given these allegations against Sentinel, Plaintiff alleges that the United States had a duty to hire a more reliable contractor.

**B.    Statutory Background**

Under the doctrine of sovereign immunity, the United States may not be sued without its consent. *United States v. Mitchell*, 445 U.S. 535, 538 (1980). "A waiver of sovereign immunity 'cannot be implied but must be unequivocally expressed.'" *Id.* (quoting *United States v. King*, 395 U.S. 1, 4 (1969)). The government's consent to be sued "must be 'construed strictly in favor of the sovereign,'" *Ruckelshaus v. Sierra Club*, 463 U.S. 680, 685 (1983) (quoting *McMahon v. United States*, 342 U.S. 25, 27 (1951)), and must not be "'enlarge[d] . . . beyond what the language requires,'" *id.* at 685–86 (alteration in original) (quoting *E. Transp. Co. v. United States*, 272 U.S. 675, 686 (1927)).

The FTCA, upon which Plaintiff premises his claims against the United States, provides a limited waiver of federal sovereign immunity. It permits individuals to bring suit in federal district court against the United States "for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment." 28 U.S.C. § 1346(b)(1). The FTCA allows suits to proceed "under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." *Id*.

But the FTCA's waiver of sovereign immunity is subject to several exceptions, at least two of which may be relevant here. First, the FTCA does not waive sovereign immunity for claims "based upon the exercise or performance" of "a discretionary function or duty . . . , whether or not the discretion involved be abused." *Id.* § 2680(a). Second, the FTCA does not waive sovereign immunity for intentional torts, including "[a]ny claim arising out of assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights." *Id*. § 2680(h). "[A]bsent full compliance with the conditions the Government has placed upon its waiver, courts lack jurisdiction to entertain tort claims against it." *GAF Corp. v. United States*, 818 F.2d 901, 904 (D.C. Cir. 1987).

## II. LEGAL STANDARD

When confronted with a motion to dismiss under both Rule 12(b)(1) and Rule 12(b)(6), the Court must first consider whether it has subject-matter jurisdiction. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94–95 (1998). Federal courts are courts of limited subject-matter jurisdiction and "possess only that power authorized by the Constitution and statute." *Kokkonen*

*v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). The plaintiff bears the burden of establishing jurisdiction, *Kokkonen*, 511 U.S. at 377, and "subject matter jurisdiction may not be waived," *NetworkIP, LLC v. F.C.C.*, 548 F.3d 116, 120 (D.C. Cir. 2008) (internal quotation marks and citations omitted).

A Rule 12(b)(1) motion may raise a "facial" or a "factual" challenge to the Court's jurisdiction. *See Hale v. United States*, No. 13-cv-1390, 2015 WL 7760161, at *3–4 (D.D.C. Dec. 2, 2015). A facial challenge to the Court's jurisdiction contests the legal sufficiency of the jurisdictional allegations contained in the complaint. *See Erby v. United States*, 424 F. Supp. 2d 180, 182 (D.D.C. 2006). For a facial challenge, the Court must accept the allegations of the complaint as true and must construe "the factual allegations in the complaint in the light most favorable to the non-moving party." *Id.*; *see also I.T. Consultants, Inc. v. Republic of Pakistan*, 351 F.3d at 1184, 1188 (D.C. Cir. 2003). In this sense, the Court must resolve the motion in a manner similar to a motion to dismiss under Rule 12(b)(6). *See Price v. Socialist People's Libyan Arab Jamahiriya*, 294 F.3d 82, 93 (D.C. Cir. 2002).

Alternatively, a Rule 12(b)(1) motion may pose a "factual" challenge to the Court's jurisdiction. *Erby*, 424 F. Supp. 2d at 182–83. For factual challenges, the Court "'may not deny the motion to dismiss merely by assuming the truth of the facts alleged by the plaintiff and disputed by the defendant,' but 'must go beyond the pleadings and resolve any disputed issues of fact the resolution of which is necessary to a ruling upon the motion to dismiss.'" *Id.* (quoting *Phoenix Consulting, Inc. v. Republic of Angola*, 216 F.3d 36, 40 (D.C. Cir. 2000)). In this context, the factual allegations of the complaint are not entitled to a presumption of validity, and the Court is required to resolve factual disputes between the parties. *Id.* at 183. The Court may

consider the complaint, any undisputed facts, and "'the [C]ourt's resolution of disputed facts.'" *Id.* (quoting *Herbert v. Nat'l Acad. of Scis.*, 974 F.2d 192, 197 (D.C. Cir. 1992)).

A motion to dismiss for failure to state a claim upon which relief can be granted under Rule 12(b)(6) "tests the legal sufficiency of a complaint." *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002). In evaluating a Rule 12(b)(6) motion, the Court "must first 'tak[e] note of the elements a plaintiff must plead to state [the] claim to relief,' and then determine whether the plaintiff has pleaded those elements with adequate factual support to 'state a claim to relief that is plausible on its face.'" *Blue v. District of Columbia*, 811 F.3d 14, 20 (D.C. Cir. 2015) (alterations in original) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675, 678 (2009)). The complaint, however, need not include "detailed factual allegations" to withstand a Rule 12(b)(6) motion. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A plaintiff may survive a Rule 12(b)(6) motion even if "recovery is . . . unlikely," so long as the facts alleged in the complaint are "enough to raise a right to relief above the speculative level." *Id.* at 555–56 (internal quotation marks omitted). In assessing a Rule 12(b)(6) motion, a court may consider only "the facts contained within the four corners of the complaint," *Nat'l Postal Pro. Nurses v. U.S.P.S.*, 461 F. Supp. 2d 24, 28 (D.D.C. 2006), along with "any documents attached to or incorporated into the complaint, matters of which the court may take judicial notice, and matters of public record," *United States ex rel. Head v. Kane Co.*, 798 F. Supp. 2d 186, 193 (D.D.C. 2011).

### III. DISCUSSION

The United States moves to dismiss on several grounds. At the threshold, the government argues that the Court lacks jurisdiction over Plaintiffs' negligent hiring claim based on the intentional-tort and discretionary-function exceptions to the FTCA. Dkt. 30 at 4–9. Then, on the merits, the government argues that the amended complaint does not adequately allege that

9

the United States owed a duty to Dana Hamilton. *Id.* at 9–12. In the alternative, the government contends that, even if it did owe a duty of care to Dana Hamilton, the amended complaint does not adequately allege a breach of that duty. *Id.* at 12–13.

The Court begins, as it must, with jurisdiction. Although the government's brief leads with the intentional-tort exception, the Court will first address the the discretionary-function exception, because it presents the more straight-forward grounds for dismissal. The FTCA does not waive the federal government's sovereign immunity for claims "based upon the exercise or performance" of "a discretionary function or duty . . . , whether or not the discretion involved be abused." 28 U.S.C. § 2680(a). This exception aims to "prevent judicial 'second-guessing' of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort." *United States v. S.A. Empresa de Viacao Aerea Rio Grandense*, 467 U.S. 797, 814 (1984).

The Supreme Court has established a two-prong test to assess whether government conduct falls within the discretionary-function exception. *See United States v. Gaubert*, 499 U.S. 315, 322–33 (1991). First, a court must determine whether a "federal statute, regulation, or policy specifically prescribes a course of action for the employee to follow." *Berkovitz v. United States*, 486 U.S. 531, 536 (1988). If a particular course of conduct is legally mandated but not followed, the discretionary-function exception will not apply because a government actor "has no rightful option but to adhere to [that] directive." *Id.* But if the challenged conduct "involves an element of judgment or choice," the first prong of the discretionary-function test is satisfied. *Id.* At the second prong, a court must consider whether the decision-making process in question is "of the kind that the discretionary[-]function exception was designed to shield." *Id.* The exception was intended to "protect[] only governmental actions and decisions based on

considerations of public policy." *Id.* at 537. That is, "[d]ecisions that require choice are exempt from suit under the FTCA only if they are 'susceptible to policy judgment' and involve an exercise of 'political, social, [or] economic judgment.'" *Cope v. Scott*, 45 F.3d 445, 448 (D.C. Cir. 1995) (alteration in original) (quoting *Gaubert*, 499 U.S. at 325). When the challenged conduct involves considerations of public policy, the exception protects "even government abuses of discretion." *Shuler v. United States*, 531 F.3d 930, 935 (D.C. Cir. 2008).

With respect to the second prong, Plaintiff does not—and, indeed, could not—contest that the selection of contractors is the type of policy decision that the discretionary-function exception was designed to protect. *See* Dkt. 34-1 at 10 (acknowledging that "it is difficult to argue" that the second prong is not met in this case). As Plaintiff recognizes, clear D.C. Circuit precedent establishes that "hiring, training, and supervision choices" are "susceptible to policy judgment." *Burkhart v. Wash. Metro. Area Transit Auth.*, 112 F.3d 1207, 1217 (D.C. Cir. 1997). Instead, Plaintiff pins his hopes to the first prong, arguing that "the act of hiring a prospective contractor, and arguably in maintaining the contractual relationship between the United States and its contractors, is *not* a decision which involves an element of judgment or choice." Dkt. 34-1 at 13.

Plaintiff argues that the government lacks any choice in the selection of contractors because it must comply with the Federal Acquisition Regulations ("FAR"), 48 C.F.R. § 1 *et seq*. Those regulations set forth "uniform policies and procedures for acquisition by all executive agencies." *Id.* § 1.101. As relevant here, Subpart 9.1 creates "policies, standards, and procedures for determining whether prospective contractors . . . are responsible." *Id.* § 9.100. Contracting officers cannot award contracts unless they make an "affirmative determination of responsibility." 48 C.F.R. § 9.103(b). In order to be deemed "responsible," a prospective

11

contractor must, among other things, "have a satisfactory performance record," "have a satisfactory record of integrity and business ethics," and "have the necessary organization, experience, accounting and operational controls, and technical skills." *Id.* § 9.104–1; *see also id.* § 9.104–3. A federal agency hiring a contractor thus must take certain steps and consider certain factors.

But, as other courts have recognized, the procedural requirements imposed by the FAR do no eliminate all choice from the selection of federal contractors. Rather, when selecting a contractor within the FAR framework, a government agency is "required to evaluate and weigh a plethora of factors" but still "us[es] its overall judgment as to the final choice." *Wood v. United States*, 290 F.3d 29, 38 (1st Cir. 2002); *cf. Sloan v. U.S. Dep't of Hous. & Urb. Dev.*, 236 F.3d 756, 760 (D.C. Cir. 2001) (holding that rules delineating conditions for the suspension of a business from government work did not "convert the [suspension] decision into a nondiscretionary act"). Indeed, the responsibility requirements on which Plaintiff relies unambiguously call for the exercise of policy judgment. An agency must use its sound discretion to determine what constitutes a "satisfactory" performance record or which technical skills are "necessary." 28 C.F.R. § 9.104–1. The Court concludes that a federal agency's selection of which contractor to hire involves an element of choice. Plaintiff's suggestion to the contrary strains credulity. Understandably, Plaintiff disagrees with the government's conclusion that Sentinel is a responsible contractor, but the discretionary-function exception shields "even government abuses of discretion." *Shuler*, 531 F.3d at 935.

To be sure, certain aspects of the FAR appear to create non-discretionary duties. For instance, under the regulations, "[n]o purchase or award shall be made unless the contracting officer makes an affirmative determination of responsibility." *Id.* § 9.103(b). The Court may

assume, for present purposes, that the complete failure to make that required determination could, in certain circumstances, constitute the negligent dereliction of a non-discretionary duty that could give rise to liability under the FTCA. But Plaintiff does not identify—in either his complaint or his opposition to the motion to dismiss—any specific non-discretionary duty that PSA violated when assessing whether to award a contract to Sentinel. In the absence of such an allegation, PSA's overall contracting decision involved an element of choice and the discretionary-function exception bars Plaintiff's negligent hiring claim. The Court thus lacks jurisdiction over that claim and will, accordingly, grant the government's motion to dismiss.[3]

---

[3] Because the Court concludes that the discretionary-function exception bars Plaintiff's negligent hiring claim, the Court need not consider the government's alternative argument that the intentional-tort exception also applies. The government's argument with respect to the intentional-tort exception would seem to present a question of first impression. The Supreme Court has held that the intentional-tort exception "does not merely bar claims *for* assault or battery; in sweeping language it excludes any claim *arising out of* assault or battery." *United States v. Shearer*, 473 U.S. 52, 55 (1985). The exception thus encompasses claims that "sound in negligence but stem from a battery." *Id.* But no case of which the Court is aware has addressed whether a claim against the government can "aris[e] out of" an intentional tort even where the intentional tort was committed by a third party, rather than a government employee or contractor. *Cf. id.* at 56–57 ("In enacting the Federal Tort Claims Act, Congress' focus was on the extent of the Government's liability for the actions of its *employees*," and the intentional-tort exception was "at least intended to exclude claims arising from such intentional torts committed by Government employees."). That question is best left for another day.

## CONCLUSION

For the foregoing reasons, it is hereby **ORDERED** that the government's motion to dismiss, Dkt. 30, is **GRANTED** and that Plaintiff's claims against the United States are **DISMISSED**. It is further **ORDERED** that, on or before July 21, 2021, Plaintiff shall file proof of service on Sentinel or shall establish good cause for his failure to effect service. If Plaintiff fails to do so, the Court will dismiss Plaintiff's claims against Sentinel without prejudice pursuant to Federal Rule of Civil Procedure 4(m).

**SO ORDERED**

/s/ Randolph D. Moss
RANDOLPH D. MOSS
United States District Judge

Date: July 6, 2021